UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DEMITRI N. SERIANNI,**

    **Plaintiff,**

v.                                                               Case No. 8:10-cv-2249-T-33TBM

**THE CITY OF VENICE, FLORIDA,**

    **Defendant.**

                                          /

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Virginia M. Hernandez Covington for a Report and Recommendation on Defendant's **Motion to Dismiss Complaint** (Doc. 25). For the reasons set forth herein, it is recommended that the motion be denied.

I.

Demitri N. Serianni ("Serianni") is a police officer with the City of Venice Police Department. By his Verified Complaint (Doc. 1), he alleges a claim for unlawful retaliation in violation of his First and Fourteenth Amendments rights.[1] In general terms, he complains that his rights to protected free speech were violated by the City of Venice, Florida ("the City"), when he was retaliated against for testifying at a co-worker's arbitration hearing and for

---

[1] A Notice of Scriveners Error was subsequently filed directed toward Paragraph 92 of the Verified Complaint. (Doc. 28)

opposing and reporting another officer's misuse of public funds.[2] *Id*. He seeks damages together with equitable relief.

More particularly, Serianni alleges that he was hired by the City as a police officer on or about March 4, 2002. Until the conduct complained of herein, he was considered an exemplary police officer and an asset to the City, as evidence by his performance evaluations and periodic salary increases.

In April 2006, the City hired Julie Williams as Chief of Police ("Chief Williams"). Almost immediately, Chief Williams began a systematic practice of using internal [affairs] investigations ("IA investigations") as a means of forcing long tenured officers out of the police department. In about June 2008, Officer Michael Frassetti was terminated for alleged untruthfulness following one such investigation.

In November 2008, Serianni ran for and was elected vice president of the Fraternal Order of Police ("FOP"), Local 57, which included officers employed by the City. Serianni was elected, in part, due to poor morale and to work with upper management within the City's police department to attempt to curtail the over-use of IA investigations.

In January 2009, in meetings with Chief Williams and others, Serianni submitted a list of problems with the department.

In or about February 2009, Officer Frassetti was provided signed statements executed by several officers, including Serianni, to present at his hearing before the Criminal Justice

---

[2] Initially brought against the City; its manager, Isaac D. Turner; and its Chief of Police, Julie Williams, the claims against Turner and Williams have since been dismissed. (Docs. 27, 30). Accordingly, insofar as the motion addresses these individuals, it need not be addressed herein.

Standards and Training Commission regarding potential discipline to be taken against him as a result of the findings of the IA investigation.  Also, in February 2009, Chief Williams met with leadership of the FOP, including Serianni.  At that meeting, Chief Williams allegedly denied that any problems existed within the police department.  Later that month, Chief Williams began encouraging the FOP president, Officer Dan Whitaker, and FOP staff representative, Bill Hastings, to oust Serianni from the Union, but these efforts were unsuccessful.

In March 2009, Officer David Miller was summoned by Lieutenant Eric Hill and Sergeant Jason Adams and instructed to file a complaint against Serianni.  Officer Miller was allegedly provided a list of eight suspected police violations by Lt. Hill and Sgt. Adams against Serianni, and the two allegedly assisted Officer Miller in writing a six-page complaint letter.  During this time period, Officers Miller and Whitaker were openly discussing, with officers and a Captain McNulty, Chief Williams' desire to terminate Serianni.  His March 2009 evaluation by Sergeant Kevin McGrath included a handwritten comment from Chief Williams that she would no longer meet with Serianni because of his actions as a union leader.

In May 2009, Serianni was subjected to an IA investigation by Lieutenant Ron Solanes.  Prior to the interview with Lt. Solanes, Serianni was relieved of his firearm, which was a first for the department.  Allegedly, because of the way that Serianni was being treated during the interview, the City's attorney, Robert Anderson, ordered the interview to end and

he later had Lt. Solanes apologize to Serianni's counsel for his behavior as no wrongdoing had been found.

In June 2009, Serianni was asked to resign but he declined. Shortly thereafter, Chief Williams issued Serianni a Notice of Predetermination Hearing with a recommendation of seven sustained charges against him and calling for a forty-hour suspension without pay and his removal from field training and firearms instruction duties. In July 2009, Serianni requested a formal evidentiary hearing before an arbitrator.

In August 2009, Serianni provided sworn testimony on behalf of Officer Frassetti before an arbitrator in response to a subpoena. The testimony was favorable to Officer Frassetti, who was eventually found to have not been untruthful by the arbitrator. By Serianni's account, his testimony was crucial in illustrating the falsity of the allegation against Officer Frassetti. In September 2009, Officer Frassetti was ordered reinstated by the arbitrator.

As a result of his testimony, Serianni alleges he was targeted for retaliation by Chief Williams and her immediate subordinates. A mere two days after testifying, Serianni was summoned to the office of Lieutenant Mike Rose and accused of failing to perform up to department standards. Lt. Rose was the investigative officer who handled the IA investigation of Officer Frassetti. Serianni believes that Lt. Rose's conduct toward him evidenced a retaliatory intent.

As for the pending allegations against Serianni, he declined a settlement offer from the City and continued to request a hearing that was long overdue. No hearing was conducted,

4

and by letter dated December 15, 2009, Chief Williams notified Serianni that all charges against him were dropped, together with the forty-hour suspension and corresponding loss in pay. Serianni was also reinstated to his field training and firearm instructions positions. Nonetheless, Serianni alleges that thereafter, Lt. Rose and others continued to retaliate against him. Thus, Lt. Rose changed his work hours and he was assigned solely to traffic enforcement. Serianni also made numerous requests for public records and he alleges that thereto he was treated differently in that he was made to pay for his public records requests while such was not required of other officers and some requests were not responded to at all.

On February 23, 2010, Serianni was advised by a Captain Dunaway that he had been accused (falsely) of spreading lies and rumors during that morning's briefing.

In March 2010, Serianni met with the City's Administrative Services Director, Alan Bullock, concerning the harassment that he was experiencing. During this meeting, Serianni also informed Mr. Bullock that Lt. Rose had been observed reading magazines, watching television, and leaving the city limits to attend to his personal outside business enterprise, a fishing store, while on duty and being compensated by the City. Serianni informed Mr. Bullock that he had evidence to support Lt. Rose's gross misuse of taxpayer funds and negligence. Mr. Bullock refused to accept any evidence and merely advised that he would look into the allegations. Later in March 2010, Serianni emailed Mr. Bullock requesting that Mr. Bullock look into the allegations he presented, including the allegations against Lt. Rose's misuse of taxpayer dollars and the harassment that he was experiencing.

Shortly thereafter, Serianni was again the subject of an IA investigation, ostensibly for violating one of Lt. Rose's recent rule changes. It, too, was terminated without action against Serianni. However, the very next day and as further retaliation for his testimony, Serianni was issued a written reprimand by Sgt. McGrath although no policy violation was listed.

On April 16, 2010, Serianni was issued his annual evaluation by Lt. Rose and placed on a performance improvement plan ("PIP"). In so doing, Serianni complains that Lt. Rose did not follow City policy and refused to provide him a copy of the evaluation. By his account, there was no policy allowing for the PIP. Serianni alleges that Chief Williams also had his evaluation posted in a meeting room on an investigative white board as a further act of hostility toward him. On April 27, 2010, Serianni questioned Mr. Bullock at City Hall and requested a copy of his annual review so that he could formally challenge the evaluation and being placed on the PIP. His formal challenge was initiated on April 29, 2010.

About May 4, 2010, Serianni was ordered to attend a meeting with Chief Williams and others. In this meeting, Serianni was offered the opportunity to present concerns in writing but he declined as such was not in accordance with the rules and the City had refused his request to have counsel present.

Serianni next complains that in June 2010, Sergeant Joe Whitehead made a threatening remark about putting a knife on the end of Serianni's oversized ballistics vest at his neck. As a consequence, Serianni complains that he had to obtain treatment for work-related stress and anxiety.

Serianni's complaints of harassment were investigated by an outside consultant who found no merit in the complaints. He alleges the investigation lacked impartiality and completeness.

In sum, Serianni complains that the false allegations of misconduct by supervisors, his poor performance evaluation, the retaliation for his making public records requests, Chief William's disparaging remarks about him to the press, and unfounded IA investigations were all undertaken without good cause and in retaliation for his truthful testimony of behalf of Officer Frassetti and for his "blowing the whistle" on a matter of public interest, namely Lt. Rose's misuse of taxpayer funds, a matter he alleges was outside the scope of his duties. Verified Compl. (Doc. 1).

In response to these complaints, the City contends that Serianni fails to state a claim for unlawful retaliation that is plausible on its face. More particularly, the City contends that Serianni fails to establish that: (1) he spoke as a citizen on a matter of public concern when he testified at his co-worker's evidentiary hearing and when he reported another officer's misuse of public funds; (2) his interests as a citizen outweigh the interests of the City as an employer; and (3) his speech played a substantial or motivating role in an adverse employment action. Thus, the City urges that the Verified Complaint should be dismissed, pursuant to Federal Rule of Procedure 12(b)(6). (Doc. 25).

II.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint. In deciding such a

motion, the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff. *Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* __U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1268 (11th Cir. 2009). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* __ U.S. __, 129 S. Ct. at 1949. A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* A complaint does not need to contain detailed factual allegations to survive a Rule 12(b)(6) motion, however, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks and citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court must make reasonable inferences in the plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, __ U.S. __,

129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

III.

The City first argues that Serianni fails to state a claim for unlawful retaliation under the First and Fourteenth Amendments because he cannot show that he was speaking as a citizen on a matter of public concern as required under applicable law.  Instead, the City urges that Serianni spoke as an employee on a matter of personal interest, both when he testified on behalf of Officer Frassetti and when he spoke out against Lt. Rose's misuse of funds.  Thus, it urges that Serianni cannot rely on testimony at an arbitration hearing for a fellow officer because such testimony was not on a matter of public interest.  In support, it relies chiefly on *Maggio v Sipple*, 211 F.3d 1346 (11th Cir. 2000).  There, the Eleventh Circuit held that Maggio's testimony at two grievance hearings on behalf of her former supervisor was not primarily speech by a citizen on behalf of the public but rather speech by an employee primarily on matters of personal concern.  *Maggio*, 211 F.3d at 1352-53; *see also Vila v. Padron,* 484 F.3d 1334 (11th Cir. 2007).  Similarly, as for Serianni's opposition and reporting of Lt. Rose's purported misuse of public funds, the City urges that the speech was not constitutionally protected as he was speaking pursuant to his official duties and again primarily on a matter of personal interest.  In support thereof, it primarily relies upon *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Phillips v. City of Dawsonville,* 499 F.3d 1239 (11th Cir. 2007).[3]

---

[3]The City also cites *Baker v. Chandler*, 161 F. Supp. 2d 1372 (S.D. Fla. 2001); *Burton v. City of Ormond Beach*, No. 07-15489, 2008 WL 4996771 (11th Cir. 2008) (unpublished); *Morris v. Crow,* 142 F.3d 1379 (11th Cir. 1998)*; Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997); and *Blickley v. Ford,* No. 09-16364, 2010 WL 3001876 (11th Cir. 2010) (unpublished).

9

Next, the City contends that because Serianni fails to allege facts to establish that he spoke as a citizen on a matter of public concern, the court need not address the balancing of interest called for under the second prong of such a claim.[4] As for the third prong of the analysis, the City asserts that Serianni's speech clearly did not play a substantial or motivating role in any adverse employment action. On this point, the City contends that more than just Serianni's subjective belief is required and the adverse action must have impacted an important aspect of his employment.[5] Here, it contends that the adverse actions alleged are not sufficiently adverse to meet this standard. (Doc. 25 at 13-14).

Serianni counters that his allegations are more than adequate to withstand this motion to dismiss. He asserts that the case law relied upon by the City, in particular, the *Maggio* and *Garcetti* cases, are distinguishable. Thus, unlike the facts in *Maggio*, Serianni urges that in his case he had nothing to gain personally by testifying for Officer Frassetti and, to the contrary, his testimony was adverse to his personal interest. He urges that the more analogous case is *Tindal v. Montgomery County Commission,* 32 F.3d 1535 (11th Cir. 1994), wherein a police dispatcher testified at trial on behalf of a fellow officer in a race and sex discrimination case and the court found the speech a matter of public concern. Serianni further argues that, unlike the facts in *Garcetti*, his speech was outside the course and scope of his official duties and offered as a citizen in a public forum. Again, as in *Tindal*, Serianni notes his speech was not given in support of himself or for personal gain. Rather, he contends that he had much to

---

[4]Here, the City cites *Connick v Myers*, 461 U.S. 138 (1983).

[5]Here, the City cites *Stavropoulis v. Firestone,* 361 F.3d 610 (11th Cir. 2004).

risk in such speech. In further support, Serianni cites *Woodard v. City of Gulfport,* 54 F. Supp. 2d 1305, 1539 (M.D. Fla. 1999) ("[r]eporting or testifying to sex or race discrimination suffered by co-employees or others within a public agency is unquestionably a matter of public concern"), and *Arenal v. City of Punta Gorda,* 932 F. Supp. 1406 (M.D. Fla. 1996) (officer's participation and testimony relating to a fire department investigation and his request for a police department investigation were protected by the First Amendment.).[6] As for his reports that Lt. Rose allegedly misused public funds, Serianni again urges this was a matter of public interest and is factually distinguishable from the circumstances in *Maggio*. He also urges this speech was outside the course and scope of his duties. (Doc. 29 at 4-11).

Finally, Serianni notes that the City only made passing reference to the remaining prongs of the First Amendment analysis and thus did not adequately address the same. In any event, Serianni contends that his speech satisfies the remaining prongs of such an analysis because his constitutional rights were not outweighed by the City's interests and he adequately alleged that the content of his speech on a matter of public concern played a substantial role in the decision to retaliate against him and, but for his testimony, he would not have suffered such retaliation.[7] (Doc. 29 at 11-13).

A government employer may not retaliate against its public employees for speech protected by the First Amendment. *Mitchell v. Hillsborough County,* 468 F.3d 1276, 1283

---

[6]Serianni also cites to the following persuasive authority for the proposition that truthful testimony provided at trial is *per se* a matter of public concern: *Catletti v. Rampe*, 334 F.3d 224, 229-30 (2d Cir. 2003) (citations omitted), and *Reilly v. City of Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008).

[7]In support, Serianni cites to *Woodard* and *Arenal*.

(11th Cir. 2006) (citing *Rankin v. McPherson,* 483 U.S. 378 (1987)). To establish a claim of retaliation under the First Amendment, a public employee first must show he was speaking as a citizen on a matter of public concern; second, his interests as a citizen outweighed the interests of the state as an employer; and third, the speech played a substantial or motivating role in the adverse employment action. If the employee establishes these elements, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have reached the same decision, even in the absence of the employees's protected speech. *Vila v. Padron,* 484 F. 3d 1334, 1339 (11th Cir. 2007). The first two elements are questions of law that the court decides. *Id.* The court must examine the statements at issue and the circumstances under which they are made to determine whether or not there is First Amendment protection. *Id.*

As indicated above, the court must first determine (1) if the government employee spoke as an employee or citizen, and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern. *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007) (citing *D'Angelo v. Sch. Bd. of Polk County, Fla*., 497 F.3d 1203, 1209 (11th Cir. 2007)); *Vila,* 484 F.3d at 1339; *Maggio,* 211 F.3d at 1351. If the government employee was speaking as an employee, there can be no First Amendment protection, and the constitutional inquiry ends.[8] *Boyce*, 501 F.3d at 1342. "Deciding whether

---

[8] When a public employee speaks as an employee and not a citizen, the First Amendment is not implicated. *Morris v. Crow*, 117 F.3d 449, 457 (11th Cir. 1997) (citations omitted). Additionally, when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the constitution does not insulate their communications from employer discipline. *See Garcetti,* 547 U.S. at 421 (citations omitted).

a government employee's speech relates to his or her job as opposed to an issue of public concern 'must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Id.* at 1343 (citing *Connick,* 461 U.S. at 147-48). In deciding this, "[w]e ask 'whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was."[9] *Vila*, 484 F.3d at 1340 (quoting *Mitchell,* 468 F.3d at 1283). Content is the most important factor in assessing whether particular speech touches on a matter of public concern. *Mitchell*, 468 F.3d at 1284 (citing *Thomas v City of Beaverton*, 379 F.3d 802, 810 (9th Cir. 2004)). In assessing content, "we look to whether the speech communicates a 'subject of legitimate news interest [,] a subject of general interest and a value and concern to the public at the time.[.]'" *Id.* (quoting *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004)).

For the reasons that follow, I recommend that the motion be denied, discovery proceed, and the legal arguments be revisited after development of the factual record. By my consideration, while the City's argument is not without support, a close examination of the allegations and the cited case law fail to demonstrate that dismissal is warranted at this time. On the basis of his allegations, Serianni spoke as a citizen on matters of public concern when providing his subpoenaed testimony in support of Officer Frassetti and when raising his concerns about Lt. Rose's unlawful activities with the City's Administrative Services

---

[9]The employee's motive for speaking is not dispositive but a factor that must be considered. *Morris*, 117 F.3d at 457. And, speech publically communicated may or may not touch on a matter of public concern while speech privately communicated may yet be of a public concern. *Mitchell*, 468 F.3d at 1284 n.18 (citations omitted).

13

Manager.

Of these two instances, Serianni's speech as it relates to his discussions with Mr. Bullock, i.e., that Lt. Rose was abusing his position and misusing public money and property for his personal benefit, is the more compelling of the two. The speech was rendered outside Serianni's normal duties and chain of command to a public official of the City with the apparent supervisory authority to look into police department matters. *Cf. Garcetti*, 547 U.S. at 421 (holding that Ceballos was not speaking as a citizen for First Amendment purposes because his statement at issue was made pursuant to his official duties). The content of the speech was directed toward a supervisory police officer's alleged misconduct, if not outright illegal activity, and thus is a matter of public concern. *See Tindal*, 32 F.3d at 1539-40 (holding that testimony on behalf of co-worker about supervisor's alleged discrimination constituted speech touching upon a public concern); *Reilly*, 532 F.3d at 231 (holding that police officer's testimony concerning internal investigation of alleged criminal wrongdoing within department constituted citizen speech protected by the First Amendment). Although made during a private meeting, such fact alone does not deprive the speech of its public character. *See Rankin*, 483 U.S. at 386-87 (holding that speech was protected even though remarks were made in a private rather than public setting); *Garcetti*, 547 U.S. at 420 ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive."). As alleged, it appears that Serianni had nothing to gain personally from these allegations and, as he urges on this motion, he had much to risk by making such claims against his supervisor. Given the stage of the proceedings and considering the allegations in a light most favorable to Serianni, the speech is constitutionally protected.

As for the testimony given on behalf of Officer Frassetti at his arbitration hearing, it is perhaps a closer issue as to whether Serianni spoke as a citizen on a matter of public concern. However, given Serianni's allegations and the early stage of the proceeding, I recommend that the motion be denied as to this speech as well pending development of the factual record and further legal arguments. In a light favorable to Serianni, he alleges that his testimony was as a citizen on a matter of public concern in a public forum. Thus, his testimony was given under oath, pursuant to a subpoena, at a formal arbitration hearing and was not a matter within his routine employment duties. The exact content of the speech is not fully set forth in the Verified Complaint but relates to allegations of untruthfulness against a fellow officer who was terminated after an IA investigation. As for the context of his testimony, Serianni alleges that the City's police chief was improperly using IA investigations to remove long-standing officers from the force. Serianni alleges that, subsequent to Officer Frassetti being fired, he was elected as an officer in the police union to fight such abusive investigations. By his allegations, the charges against Officer Frassetti were false and such was established by the testimony at the hearing. When considered against the backdrop of Chief William's alleged policy for improperly using IA investigations to weed out officers, the speech was arguably a matter of public concern and not merely of Serianni's personal interest. For these reasons, the motion should be denied as to this speech as well pending discovery and further development of the record.

Because the City proffers little, if any, argument on the remaining prongs, and given the findings above, the City's motion should be denied without further discussion.

In any event, consideration of the remaining prongs does not direct a different result.

15

The second prong asks whether Serianni's interest in his speech in the arbitration proceeding and his open opposition of Lt Rose with Mr. Bullock outweighed the City's interest in promoting efficient public service. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989) (quoting *Pickering*, 391 U.S. at 568). On the limited record at this juncture, it is reasonably inferred from the allegations in the Verified Complaint that Serianni's interest in speaking about these matters outweighs the government's efficiency interest because the City has lost little, if any, efficiency from Serianni's testimony at Officer's Frassetti's arbitration hearing or his discussions with Mr. Bullock. On the instant record, I conclude as such.

Serianni also alleges sufficient facts that, if proven, would support affirmative findings of fact on prongs three and four. As for the third prong, a plaintiff must allege that his speech played a substantial or motivating role in the adverse employment action taken against him. Here, while Serianni does not employ this exact language, I find the allegations sufficient to set forth this element of his proof. And, by his allegations, he experienced a variety of retaliatory acts at the hands of supervisory individuals who were acting in the stead of the City carrying out its customs and policies. The allegations, in a light favorable to Serianni, set forth more than merely his subjective belief of retaliation. The more serious retaliatory acts he complains of include unfounded IA investigations, false accusations of misconduct, a poor annual evaluation with orders for PIP training, the posting of the evaluation in a meeting room for others to see, removal from his field training and firearms training responsibilities, and transfer to traffic enforcement and a change in hours. By his allegations, the retaliation was taken without legitimate business reasons and as a consequence of his testimony on behalf of

Officer Frassetti and his opposition against Lt. Rose. On the instant motion, the City fails to demonstrate that these allegations are insufficient.

IV.

For the reasons set forth above, it is **RECOMMENDED** that the court **DENY** Defendant's **Motion to Dismiss Complaint** (Doc. 25).

    Respectfully submitted on this
    25th day of May 2011.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record